UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ALISHA MARZETTE<br>and KATHY DUNMIRE, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| vs. | )<br>) | No. 4:10-CV-539 CEJ |
| ANHEUSER-BUSCH, INCORPORATED<br>TERRY KAELIN, RICK MARBERRY<br>and NANCY LUX, | )<br>)<br>)<br>) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiffs' motion to remand this action to the Circuit Court of the City of St. Louis, Missouri from which it was removed. Defendants have filed a response opposing plaintiffs' motion, and the issues are fully briefed.

### I. Background

Plaintiffs were formerly employed as security guards by defendant Anheuser-Busch. Plaintiffs were supervised by defendants Terry Kaelin and Rick Marberry. Plaintiff Alisha Marzette asserts claims of discrimination based on sex and race and retaliation, in violation of the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. § 213.010 et seq. Specifically, Marzette alleges that defendants treated her differently from similarly-situated white and male employees (1) by not allowing her to rotate between different job assignments on her shift and assigning her to consistently work in one location; (2) by failing to provide training; (3) in assigning a vehicle to her; (4) removing her from working in a certain unit; and (5) adopting and enforcing a policy affecting hairstyles.

Plaintiff Kathy Dunmire asserts claims of sex discrimination and constructive discharge, also in violation of the MHRA. Specifically, Dunmire alleges that defendants treated her less favorably than similarly-situated male employees with respect to light duty work after returning from an injury, work monitoring, and vehicle assignment.

On March 30, 2010, defendants removed the action to this Court, asserting subject matter jurisdiction pursuant to § 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185, which grants exclusive federal jurisdiction over state-law claims that are based on, or require interpretation of, a collective-bargaining agreement (CBA). In their motion to remand, plaintiffs argue that their allegations regarding job assignments do not require interpretation of the CBA and that their state-law claims are thus not preempted by § 301 of the LMRA. Plaintiffs further argue that the provision of the CBA on which defendants rely is inapplicable to the claims asserted in the first amended petition.

In opposing remand, defendants argue that plaintiffs' claims require the interpretation of several portions of the CBA. Specifically, defendants cite to the sections of the CBA governing job assignment and training addressed in the portion of the CBA titled "Memorandum of Understanding: Job Assignments" (MOU).[1] (Doc. #1-3 at pp.42, 45). They argue that the adverse actions at issue in plaintiffs' complaint were governed by this portion of the CBA, and thus, resolution of plaintiffs' claims will

---

[1]"The company shall continue the current practice of shift selection and recreation day selection which strongly considers seniority with the following understandings as the basis: the ability to perform on the shift or schedule in a manner acceptable to supervision, assignment of the most senior employee to the desired shift or schedule will be made if the employee meets all qualifications as deemed necessary by the company, employees will maintain the level of performance expected by the company or they will be reassigned, and employees will be expected to move from job to job on the shift if required by the company to maintain their skills on all jobs." (Doc. #1-3 at p. 42).

depend upon an interpretation of this section.  Defendants also cite to Article XVIII of the CBA addressing seniority.[2]  (Doc. #13-2 at p.22 ).  They argue that this section must be interpreted to determine whether other employees were "similarly situated."  Defendants also refer generally to Article X ("Adequate Help"), Article VI ("Health and Safety"), and Article V ("Causes Not Sufficient For Discharge").  They argue that Dunmire's complaints require an analysis of these sections to determine whether defendant's actions were taken in accordance with the CBA.

Finally, defendants state in their notice of removal that plaintiffs failed to exhaust the procedures and remedies provided in Article XIII of the CBA titled "Grievance and Arbitration."  (Doc. #13-2 at p.11).  But defendants have not addressed the effect, if any, that this arbitration provision has on the issue of jurisdiction.  Thus, defendants' argument against remand rests boils on the assertion that the resolution of at least one of plaintiffs' state law claims is dependent upon one of the above cited portions of the CBA.

II. **Discussion**

   A. **Applicable Law**

Any civil action brought in a state court over which the district courts have original jurisdiction may be removed to the proper district court.  28 U.S.C. § 1441 (a).  In the event that the federal court determines it does not have subject-matter jurisdiction over a removed action, it must remand the action to state court where it originated.  28 U.S.C. § 1447 (c).  Removal statutes are strictly construed, and any

---

[2]Article XVIII provides, in part, that "[s]eniority of guards shall be deemed to have commenced on the date they are first employed as guards by the Employer by whom they are employed at the time the employee's seniority comes into question." (Doc. #13-2 at p. 22).

doubts about the propriety of removal must be resolved in favor of remand. In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1993). As the party invoking jurisdiction, defendant has the burden of establishing that prerequisites to jurisdiction have been satisfied. Id.; Hatridge v. Aetna Cas & Sur. Co., 415 F.2d 809, 814 (8th Cir. 1969). Generally, in determining whether removal was proper, the court must look to the plaintiff's pleadings at the time of removal. Pullman Co. v. Jenkins, 305 U.S. 534, 537-38 (1939). The basis for federal jurisdiction must be apparent from the face of the plaintiff's properly pleaded complaint. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). However, where a complaint raises issues to which federal applies with preemptive force, the Court must look beyond the face of the complaint in determining whether remand is proper. Williams v. National Football League, 582 F.3d 863, 874 (8th Cir. 2009).

The defendants have alleged federal jurisdiction on removal based upon Section 301 of the LMRA which states that federal law governs "suits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185 (a). The Supreme Court has held that federal law exclusively governs suits for breach of a CBA, and thus, § 301 of the LMRA applies with preemptive force. United Steelworkers v. Rawson, 495 U.S. 362, 369 (1990). Section 301 preempts state law claims that are "substantially dependent upon analysis" of a CBA, Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985), because "the application of state law…might lead to inconsistent results since there could be as many state law principles as there are States." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 406 (1988); See also Williams, 582 F.3d at 874.

In applying the § 301 preemption doctrine, the Court begins with the "claim itself," Trustees of the Twin City Bricklayers Fringe Benefit Funds v. Superior

Waterproofing, Inc., 450 F.3d 324, 331 (8th Cir. 2006), and applies a two-step approach in order to determine if the claim is sufficiently "independent" to survive § 301 preemption. Williams, 582 F.3d at 874. First, a state law claim is preempted if it is "based on" a provision of the CBA, meaning that "the CBA provision is at issue" and "it actually sets forth the right upon which the claim is based." Id. Second, § 301 preemption applies where a state law claim "is dependent upon an analysis of the relevant CBA," meaning that the resolution of plaintiff's state law claim requires interpretation of a provision of the CBA. Id.

While it is fairly clear that federal jurisdiction cannot arise solely based upon a counterclaim, see Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc., 535 U.S. 826 (2002) (declining to uphold jurisdiction based upon defendant's counterclaim in the patent law context where federal preemption also applies), there is a substantial split between the Circuits as to whether an affirmative defense requiring the interpretation of a CBA can convey federal jurisdiction. See Atwater v. National Football League Players Ass'n, 626 F.3d 1170, n.14 (11th Cir. 2010) (discussing the unsettled state of the law on this issue). Even within the Eighth Circuit there appears to be a conflict on this issue with panel opinions supporting both a broad and narrow application of Section 301 preemption. Id. at n.14 (noting the inconsistent Eighth Circuit cases); see also Williams, 582 F.3d at 877 n.13 (discussing the Eighth Circuit opinions supporting both rules and declining to consider defendant's affirmative defenses as a basis for federal jurisdiction).

After careful consideration of parties' arguments and cited case law, the Court is persuaded by the reasoning set forth by the Williams decision. Under this more narrow construction of Section 301 preemption, a court determines "whether the claim

itself, regardless of probable defenses, is necessarily grounded in rights established by the CBA." Williams, 582 F.3d at 877 n.13. Further, the Court in Williams reiterated that Section 301 preemption only applies to claims that "require interpretation or construction of the CBA" as opposed to "those which only require reference to it" or where "the CBA need only be consulted during its adjudication." Id. at 876 (quoting Trustees of the Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc., 450 F.3d 324, 331 (8th Cir. 2006); citing also Livadas v. Bradshaw, 512 U.S. 107, 124-25, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994)).

Addressing the employer's concerns over consistency in collective bargaining agreement interpretation, the Williams Court agreed with the Ninth Circuit in finding this justification unpersuasive. Id. at 877-78 (citing Cramer v. Consolidated Freightways, Inc., 255 F.3d 683, 695 n. 9 (9th Cir.2001) (en banc). The Williams Court found further support in for this rule in the Supreme Court's observation that:

> [T]here [is not] any suggestion that Congress, in adopting § 301, wished to give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation. Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored. Clearly, § 301 does not grant the parties to a [CBA] the ability to contract for what is illegal under state law. In extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.

Id. at 878 (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211-12 (1985); citing also Livadas, 512 U.S. at 123 (cautioning that section 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law")).

Like the Williams plaintiffs, plaintiffs here allege violations of rights independent from the CBA and created under state law. Thus, the Court must examine the elements of the state law claim, as plead by plaintiffs, to determine whether resolution of any claim is "inextricably intertwined" the with the portions of the CBA cited by defendants. Dunn v. Astaris, 292 Fed. Appx. 525, 526-27 (8th Cir. 2008). To establish a discrimination claim under the MHRA plaintiffs must show that: 1) the defendant committed a discriminatory act; 2) one or more of the protected classifications such as race, color, religion, national origin, sex, ancestry, age, or disability was a contributing factor in such discriminatory act; and 3) plaintiff sustained damage as a direct result of defendant's discriminatory act. See Daugherty v. City of Maryland Heights, 231 S.W.3d 814 (Mo. 2007). The MHRA defines "discrimination" to include " any unfair treatment based on race, color, religion, national origin, ancestry, sex, age as it relates to employment." Id. at 819; see also Mo. Rev. Stat. § 213.055. And determining whether discrimination was a contributing factor "often depends upon inferences rather than direct evidence." Marez v. Saint-Gobain Containers, Inc., --- F.Supp.2d ----, 2010 WL 3719927 *7 (E.D.Mo. 2010) (citing Daugherty, 231 S.W.3d 814).

### B. The Collective Bargaining Agreement

Defendants first contend that the MOU regarding job assignments set forth the criteria for how jobs were assigned and employees were trained. (Doc. #1-3 at p. 42). Indeed the portions of the CBA cited by defendants set forth procedures and criteria for how jobs and training were to be assigned to employees. But plaintiffs do not allege that defendants did or did not adhere to the procedures set forth in the CBA, they allege that they were treated differently from similarly situated employees on the

basis of race or sex. This determination is a factual one and will succeed or fail not based upon an interpretation of the CBA, but through a fact finder's evaluation of defendants' conduct and motives with regard to plaintiffs and similarly situated employees. Defendants may indeed find it helpful to reference this portion of the CBA to show that sex or race was not a contributing factor in their actions. However, as stated in <u>Williams</u>, defendants' potential defense theories based upon a CBA cannot give rise to Section 301 preemption nor can they justify otherwise unlawful actions through some specific portion of a CBA. <u>Williams</u>, 582 F.3d at 879, n.13. To allow otherwise would effectively let the parties alter or redefine nonwaivable rights created under state law -- a result that is inconsistent with the intent behind Section 301 preemption. <u>See</u> <u>id.</u> at 877-78.

Defendants' citation to those portions of the CBA titled "Adequate Help," "Health and Safety," and "Causes Not Sufficient For Discharge" are also unavailing. Defendants claim that "Dunmire's job skills, physical fitness, continuous service, ability to perform and ability to meet necessary qualifications, as well as her right to limit the work she will perform, A-B's obligation to provide a safe working environment . . . must all be examined pursuant to an interpretation of the rules and obligations set forth in the CBA." (Doc. #19). However, unlike the cases cited by defendants, plaintiffs here are not basing their MHRA claim on any duty or right under the CBA. Each of their claims is framed only in terms of how they were treated in comparison with male and/or white employees under similar circumstances. <u>See</u> <u>e.g.</u> <u>John v. International Ass'n of Machinists and Aerospace Workers Local #1010, et al</u>, 139 F.3d 1214 (8th Cir. 1998) (plaintiff's intentional infliction of emotional distress claim required a finding that employer's actions were outrageous and breach of CBA was

necessary for this finding); Fant v. New England Power Service Co. et al., 239 F.3d 8 (1st Cir. 2001) (plaintiff alleged discharge in breach of CBA which involved a "real interpretive dispute"). Because none of the interpretive issues raised by defendants here would dispose of any of plaintiffs' claims, these sections of the CBA are also insufficient to trigger Section 301 preemption.

Defendant's next argue that specific portions of the CBA addressing seniority and other factors to be used in job assignment and training must be interpreted to determine whether other employees are "similarly situated." Again, Missouri state law determines whether employees are similarly situated just as it determines what constitutes a discriminatory act under the MHRA. See Hill v. Ford Motor Co., 277 S.W.3d 659 (Mo. 2009) (reiterating that the MHRA provides broader protection then Federal discrimination law). While reference to or "mere consultation" of a portion of the CBA may assist a fact finder in resolving the "similarly situated" element of plaintiffs' claims, it will not determine that issue as a matter of law. Rephrased, the parties cannot contractually alter their respective rights and duties under the MHRA, thus the portions of the CBA cited by defendants can only be instructive, not determinative of plaintiffs' claims as plead here.

Defendants have also filed a motion to dismiss alleging that plaintiffs' claims are barred by their failure to exhaust the alternative dispute resolution procedures provided in the parties' CBA. This allegation was also cited in defendants' notice of removal as a basis for jurisdiction, but was not addressed in defendants' brief opposing remand. As discussed above, defendants' affirmative defenses based upon the parties' CBA cannot give rise to Section 301 preemption. Williams, 582 F.3d at 879, n.13.

Finally, the Court finds that defendants' had an "objectively reasonable basis for removal." Therefore, plaintiffs' are not entitled to costs and attorneys' fees incurred in the preparation of this motion. See Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Williams, 582 F.3d at 879, n.13.

### III. Conclusion

The Court finds that plaintiffs' claims are not dependent upon an interpretation of the parties' CBA and this Court lacks subject matter jurisdiction under § 301 of the LMRA, 29 U.S.C. § 185.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion to remand [Doc. #14] is **granted**.

**IT IS FURTHER ORDERED** that plaintiffs' request for reasonable costs and attorneys fees is **denied**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall remand this action to the Twenty-Second Judicial Circuit Court of Missouri (City of St. Louis) from which it was removed.

*/s/ Carol E. Jackson*
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 26th day of January, 2011.